JANVIER, Judge.
Plaintiff seeks recovery under the Louisiana Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq., claiming to have been totally and permanently disabled as the result of an accident which is alleged to have occurred on a dock in the Mississippi River at Greenville, Mississippi, while plaintiff, a seaman in the employ of defendant, Oil Transport Company, Inc., was assisting in unloading from a -motor vehicle on the said dock a welding machine and certain marine equipment which was to be transferred from the dock to a motor vessel, the Bayou Lacombe, of which plaintiff was engineer and which was owned by the said Oil Transport Company, Inc.
The defendant-employer, Oil Transport Company, Inc., and its liability insurer, the Employers Liability Assurance Corporation, Ltd., incorrectly designated in the petition as Employer’s Group, filed exceptions of no cause of action and no right of action and also showed that the insurer of the employer was the Employers Liability Assurance Corporation, Ltd., and not “Employer’s Group.” The exceptions were based on the contention that there is no right in plaintiff to recover under the Louisiana Workmen’s Compensation Laws “because he was a seaman at the time of the alleged injury and is governed exclusively by the provisions of the Jones Act,” 46 U.S.C.A. § 688.
Plaintiff amended his petition so as to properly designate the Employers Liability Assurance Corporation, Ltd., as a defendant.
On the same day on which the defendant brought this suit for workmen’s compensation in the State court, he filed a suit in the United States District Court for the Eastern District of Louisiana in which he sought recovery under the so-called Jones Act.
The exceptions in the suit in the State court were overruled and defendants filed answer in which, after reserving their *732 rights under the exceptions, then, in effect, denied that plaintiff had sustained any disabling injury as the result of the alleged accident, or that a pre-existing physical condition had been activated or aggravated by any such alleged accident, and defendants also averred that “seamen are the special wards of admiralty and are within the paramount jurisdiction of the United States admiralty court and subject exclusively to the remedies provided by the Jones Act. 46 U.S.C.A. § 688.”
After an extensive trial on the question of whether plaintiff had been disabled as a result of such an alleged accident, there was judgment dismissing this suit for compensation. The District Judge, in written reasons, stated that in his opinion the plaintiff was suffering from a pre-existing condition which was not “aggravated or accelerated by any incident that took place at Greenville, Mississippi”, but that plaintiff’s present physical complaint resulted from “a condition plaintiff was suffering from prior to the time” of the alleged accident and for which the defendants are not responsible.
Plaintiff appealed, and defendants answered the appeal praying that the judgment of dismissal be affirmed, but that it be based on the maintenance of the exceptions founded on the contention that the claim of plaintiff, if he has any claim, does not arise under the State Compensation laws, but is governed exclusively by the provisions of the Jones Act.
The facts, except on the question of whether plaintiff is disabled and whether, if there is disability, it resulted from the alleged accident, are not seriously in dispute.
That plaintiff is a seaman is alleged by him and is conceded. For some time he had been employed as Chief Engineer on the power tug, Bayou Lacombe, which was owned by defendant, Oil Transport Company, Inc., and was used in its interstate river transportation business. His regular monthly pay was $650. The motor vessel operated on the Mississippi River and its tributaries, going as far North as Cincinnati, Ohio, and as far South as New Orleans. At the time of the alleged accident, the vessel was in the course of a trip to Cincinnati, Ohio.
The plaintiff had been off duty for thirty days when he received instructions to meet the vessel at Greenville, Mississippi. Just where he was when he received these instructions is not made clear. He apparently was in New Orleans and, as a result of the instructions, he met Mr. Lamar C. Jones, Vice-President and marine superintendent of the defendant, Oil Transport Company, Inc., in New Orleans, and drove a station wagon apparently belonging to the employer to Mendenhall, Mississippi, which was on the route to Greenville, and was followed by Mr. Jones and his wife in their automobile. At Mendenhall, after a short visit with relatives of Mr. Jones, the station wagon, with plaintiff driving, picked up a welding machine with “cables” and “other equipment”, and proceeded to Greenville, Mississippi. At Greenville plaintiff drove the station wagon on to the dock in the Mississippi River. While the welding machine, the cables and the other equipment were being unloaded from the station wagon to the dock, for transportation by a motor vessel from the dock to the Bayou Lacombe, the welding machine slipped and, in an effort to catch it, plaintiff put his foot into a hole in the dock and undoubtedly did sustain some injury which, at that time, seemed very slight.
The dock consisted of two barges, and, though there is a dispute on the question, we think that the record indicates that those barges were actually afloat though they were moored together and to the land and had not been moved for many years.
It is the contention of plaintiff that under these facts he was entitled, at his option, to pux-sue recovery in the Federal Court under the Jones Act or to seek compensation under the State é Workmen’s Compensation laws and that since he was entitled *733 to either recovery he was within his rights in filing this suit and also the one in the Federal court, and in allowing one to remain dormant until he could obtain a determination of the other.
It is the contention of the defendants that since plaintiff is admittedly a seaman and at the time of the alleged accident was carrying out duties imposed upon him by his employer as a seaman and which duties were in connection with the successful care and proper operation of the vessel to which he was assigned, his recovery, if any, may be exclusively under the Jones Act.
In Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, it was held that a longshoreman engaged in the loading of an ocean-going vessel lying in navigable waters might not claim compensation under State laws, and in Peters v. Veasey, 251 U.S. 121, 40 S.Ct. 65, 64 L.Ed. 180, it was held that the same rule should apply to a longshoreman unloading a vessel (reversing 142 La. 1012, 77 So. 948).
Since those decisions there have been numerous others by the United States Supreme Court and this and other Courts in which it has been held that the principle enunciated in those cases has not been abandoned. In many of these later decisions to which we refer it has been further held, however, that the principle should be limited to situations in which the employee is doing some act which is not purely local in character and which does not concern the safety, maintenance, loading, unloading or operation of the vessel. In those decisions, which have not overruled the decision in the Jensen case, or in the Veasey case, it was held that -under certain facts there is established a so-called “Twilight Zone” as a result of which longshoremen and harbor workers may, at their option, seek recovery under State Compensation laws, or may seek recovery under the Longshoremen’s and Harbor Workers’ Compensation Act, 33 U.S.C.A. § 901 et seq., and, in the case of seamen, may seek recovery under the Jones Act, 46 U.S.C.A. § 688, or under State Compensation laws.
This Twilight Zone is said to exist when the employee, though a longshoreman or harbor worker in one case, and though a seaman in the other case is engaged in duties which do not involve the maintenance and operation of a ship or the proper storage or unloading of cargo, or are of a purely local nature.
The cases to which we have referred are cited and discussed at length in the opinion of the First Circuit Court of Appeal in Beadle v. Massachusetts Bonding & Ins. Co., 87 So.2d 339, and by us in Ellis v. Travelers Insurance Co., 123 So.2d 780, and no useful purpose would be served by another lengthy discussion of those numer^ ous decisions. It is true that in the Ellis Case, decided by us on October 24, 1960, the Supreme Court of Louisiana has granted a writ of certiorari, and it is possible that the final result may be that the claimant may be held to be protected by the Twilight Zone doctrine, but regardless of the final result in that particular case, we have no doubt that the jurisprudence establishes a recognition of the Twilight Zone doctrine and also recognizes the fact that there is no Twilight Zone in the case of the longshoreman aboard a vessel lying in navigable waters who is loading or unloading the vessel, and that it does not exist in the case of the seaman who is performing a duty connected with the operation or maintenance or care of the ship. The jurisprudence also establishes that, in the case of the seaman, he need not be on board the vessel to be within the protection of the Jones Act. This was squarely held in Lindgren v. United States, 1930, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686, and in O’Donnell v. Great Lakes Dredge & Dock Co., 1943, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596. The Lindgren case was decided before the Twilight Zone doctrine made its appearance, but the O’Donnell case was decided about a year after the enunciation of that doctrine *734 and, as a result, it is now certain that the seaman need not be on board his vessel to be within the protection of the Jones Act.
It, therefore, becomes unnecessary that we determine whether the dock on which the alleged accident occurred should be considered as a floating vessel or an extension of the land. In either case if the seaman was engaged in such duties as we have referred to, he was within the protection of the Jones Act.
These questions and other related problems are ably discussed in several articles which have recently appeared in law journals and otherwise, and in these discussions all of the cases to which we have referred have been cited. Among them are an article entitled “Admiralty — The ‘Twilight Zone’ — Longshoremen’s Act and Louisiana Compensation Act as Concurrent Remedies,” XIX Louisiana Law Review, 511; “At Sea with the United States Supreme Court,” 38 North Carolina Law Review 307, and “Conflict in State-Federal Jurisdiction in Maritime Matters,” Vol. 20, Federal Bar Journal 202.
In the North Carolina Law Review the author discussed Senko v. LaCrosse Dredging Corp., 7 Ill.App.2d 307, 129 N.E.2d 454, in which the facts illustrate a situation in which the Twilight Zone doctrine, if such a doctrine is to be recognized, is obviously applicable. There the injured party was not a seaman nor regularly employed as a longshoreman, “he was simply a handy-man and assistant for a crew of men operating an earth-removing machine which happened to be afloat and which, occasionally and always in Senko’s absence, was pushed from place to place.”
We cite this case merely to show the distinction between a situation in which the employee is carrying out the duties usually imposed upon seamen and the situation in which an ordinary employee, afloat or ashore, is engaged in the performance of some purely local and non-maritime duty.
In the case before us the record does not show just to what use the welding machine, or the cables or other equipment were to be put. Obviously, however, they were to be used either in the repair or maintenance of the vessel, or they were cargo to be carried to some other port. In either case, since the plaintiff was engaged in assisting in the transportation of those articles to the vessel, we think that he was clearly within the protection of the Jones Act and that the Twilight Zone doctrine is not applicable.
We note particularly the latest holding, by the United States Circuit Court of Appeals for the Fifth Circuit in which, on rehearing, that Court, in Noah v. Liberty Mutual Ins. Co., 265 F.2d 547, held that there could be no recovery under State Compensation laws under the facts there presented. 267 F.2d 218. In that case the Circuit Court of Appeals finally held that a longshoreman, doing longshoreman’s work on navigable waters, was not within the contemplation of the Twilight Zone doctrine and could not recover under State Compensation laws.
Previously, in Flowers v. Travelers Ins. Co., 258 F.2d 220, in which the Supreme Court denied writs of certiorari, 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582, the Fifth Circuit Court of Appeals held that the Twilight Zone doctrine did not apply to a welder injured while making repairs to a ship which was in a floating drydock. This case is particularly interesting here since it seems almost certain that the welding machine was being carried to a motor tug for the making of repairs.
Our conclusion is that plaintiff has no cause of action under the State Workmen’s Compensation laws and that the exception of no cause of action is well founded.
Accordingly, the exception of no cause of action is maintained, and the judgment dismissing the suit is affirmed at the cost of appellant.
Affirmed.